USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/28/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
CALIKO, SA,                                     :
                                                :
                              Plaintiff,        :              21-CV-3849 (VEC)
            -against-                           :
                                                :              OPINION AND ORDER
FINN & EMMA, LLC,                               :
                                                :
                              Defendant.        :
------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

      Plaintiff Caliko, SA has sued Finn & Emma, LLC, alleging: (1) trademark infringement

under the Lanham Act; (2) common law trademark infringement; (3) trade dress infringement

under federal law; (4) trade dress infringement under New York state law; (5) false designation

of origin, false advertising, and unfair competition under the Lanham Act; (6) unfair competition

under New York state law; and (7) deceptive acts and practices under N.Y. Gen. Bus. Law §§

133 and 349.  *See* Compl., Dkt. 1.  Defendant has moved to dismiss Plaintiff's complaint for

improper venue and failure to state a claim as to any of its causes of action, pursuant to Federal

Rules of Civil Procedure 12(b)(3) and 12(b)(6), respectively.  *See* Def. Mem. of Law, Dkt. 19.

Plaintiff opposes the motion.  *See* Pl. Mem. of Law, Dkt. 22.  For the reasons discussed below,

Defendant's motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND[1]

      Plaintiff is a French company that sells baby furniture.  Compl., ¶ 9.  It has used its

federally registered trademark, CHARLIE CRANE, and its unregistered trademark, LEVO, in

---

[1]     The Court assumes the truth of the facts alleged in the Complaint for purposes of deciding Defendant's
motion to dismiss.

connection with the sale of baby rockers in the United States since at least April 2015. *Id.* at ¶¶ 10–12, 13.  Plaintiff alleges trade dress rights in its LEVO Rocker. *See id.* at ¶¶ 16, 18–20.

From approximately March 2018 until 2020, Defendant was an authorized distributor of the LEVO Rocker, and used Plaintiff's CHARLIE CRANE and LEVO trademarks to promote and sell the rocker. *Id.* at ¶¶ 21–23.  In 2018 and 2019, Defendant unsuccessfully attempted to negotiate a license from Plaintiff to use its marks on products manufactured by other companies. *Id.* at ¶¶ 24–27.  According to Plaintiff, when those negotiations were unsuccessful, Defendant decided to "willfully copy the LEVO Rocker by having it manufactured by an unauthorized source in China." *Id.* ¶ 28.  Plaintiff alleges that it learned from a dissatisfied customer that Defendant used Plaintiff's CHARLIE CRANE and LEVO trademarks to advertise and sell counterfeit rockers. *Id.* ¶¶ 32–34.

## DISCUSSION

**I.    Defendant's Motion to Dismiss for Improper Venue**

Defendant moves to dismiss for improper venue, arguing that, as a New Jersey corporation, it is not subject to personal jurisdiction in New York and that the alleged infringement did not substantially occur in New York. *See* Def. Mem. of Law at 7.

Pursuant to 28 U.S.C. § 1391(b), venue is proper in: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) if there is no district in which any action may otherwise be brought, any judicial district in which any defendant is subject to personal jurisdiction with respect to the case at issue. 28 U.S.C. § 1391(b).  For purposes of venue, a corporate defendant is deemed to reside in any

judicial district in which that entity is subject to the Court's personal jurisdiction with respect to the civil action in question.  28 U.S.C. § 1391(c)(2).

When responding to a motion to dismiss for lack of venue, the plaintiff bears the burden of establishing that venue is appropriate.  *See, e.g.*, *Person v. Google Inc.*, 456 F. Supp. 2d 488, 493 (S.D.N.Y. 2006); *Caremark Therapeutic Servs. v. Leavitt*, 405 F. Supp. 2d 454, 457 (S.D.N.Y. 2005).  When the motion to dismiss is decided on the basis of the pleadings (rather than on the basis of an evidentiary hearing), the plaintiff need only make a *prima facie* showing that venue is proper.  *Reliability Inc. v. Doki*, No. 20-CV-7109, 2021 WL 3408589, at *8 (S.D.N.Y. Aug. 4, 2021) (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005)).

In deciding a motion to dismiss for lack of venue, the Court may consider materials outside the pleadings.  *See Caremark*, 405 F. Supp. 2d at 457.  The Court must, however, "accept[] facts alleged in the complaint as true, and draw[] all reasonable inferences in plaintiff's favor."  *Id.*; *see also Phillips v. Audio Active Ltd.*, 494 F3d 378, 384 (2d Cir. 2007).

### A.    § 1391(b)(1)

Venue is appropriate under § 1391(b)(1) in any judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located.[2]  28 U.S.C. § 1391(b)(1).  Because residency for purposes of venue is defined in terms of personal jurisdiction, *see* 28 U.S.C. § 1391(c)(2), the inquiry under this subsection collapses into a personal jurisdiction analysis, *see, e.g.*, *Bank of Am., N.A. v. Wilmington Tr. FSB*, 943 F. Supp. 2d 417, 421–22 (S.D.N.Y. 2013); *Glob. Merch. Servs., Ltd. v. Sunfrog, LLC*, No. 17-CV-10154, 2018 WL 11223365, at *4 (S.D.N.Y. Aug. 9, 2018) ("where a defendant is subject to the court's

---

[2]        The latter condition is irrelevant here, where there is only one defendant.

personal jurisdiction with respect to the civil action in question, venue will be proper in the court's judicial district.").

Personal jurisdiction of a federal court over a non-resident defendant[3] is governed by the law of the state in which the court sits and by the limits of due process. *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). Accordingly, the Court must engage in a two-part analysis. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). The Court first looks to the long-arm statute of New York, the forum state. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). If the exercise of jurisdiction is appropriate under New York's long-arm statute, the Court must then decide whether such an exercise comports with due process; a state may authorize personal jurisdiction over an out-of-state defendant only if "the defendant has certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (cleaned up).

### 1.   C.P.L.R. § 302(a)(1)

New York's long-arm statute provides for both general and specific jurisdiction, but Plaintiff argues only that Defendant is subject to specific personal jurisdiction. *See* Compl. ¶¶ 7–8, 72, *see also* Decl. of Thomas Lépine, Dkt. 23 ¶¶ 4-5. Pursuant to C.P.L.R. § 302(a)(1), a court may exercise specific jurisdiction over a nondomiciliary that "in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." C.P.L.R. § 302(a)(1).

"To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted

---

[3]     Defendant is incorporated in and has its principal place of business in New Jersey. *See* Compl. ¶ 2; Def. Mem. of Law at 7–9.

must arise from that business activity." *Eades v. Kennedy, PC Law Offs.*, 799 F.3d 161, 168 (2d Cir. 2015) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013)).  With respect to the "transacting business" part of the analysis, courts look to "the totality of the defendant's activities within the forum." *Sterling Nat'l Bank & Tr. Co. of N.Y. v. Fidelity Mortg. Invs.*, 510 F.2d 870, 873 (2d Cir. 1975) (citations omitted).  The plaintiff's cause of action must also arise from defendant's transaction of business in the state, which requires "an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Henderson v. INS*, 157 F.3d 106, 123 (2d Cir. 1998) (cleaned up).

Section 302(a)(1) is a "single act statute," which means that "proof of one transaction in New York is sufficient to invoke jurisdiction." *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006) (internal quotation marks and citation omitted).

It is well established that a "single act" of selling counterfeit goods into New York satisfies the long-arm statute under Section 302(a)(1).  *See Chloé*, 616 F.3d at 170 (discussing *Baron Phillipe de Rothschild, S.A. v. Paramount Distillers, Inc.*, 923 F. Supp. 433 (S.D.N.Y. 1996)); *see also Poof-Slinky, LLC v. A.S. Plastic Toys Co.*, No. 19-CV-9399, 2020 WL 5350537, at *4 (S.D.N.Y. Sept. 4, 2020) (holding Defendant was subject to personal jurisdiction because, *inter alia*, it sold allegedly counterfeit products to at least one New York customer). Accordingly, in a trademark infringement action, venue is appropriate in every jurisdiction in which an alleged infringement occurred.  *Baron Phillipe de Rothschild*, 923 F. Supp. at 437; *see also Now-Casting Econ., Ltd. v. Econ. Alchemy LLC*, No. 18-CV-2442, 2019 WL 4640219, at *8 (S.D.N.Y. Sept. 24, 2019).

Defendant argues that it is not subject to personal jurisdiction in New York because: (1) neither party resides in the state;[4] (2) it has no offices, stores, business locations, or employees in New York; and (3) it ships all orders from New Jersey.  *See* Def. Mem. of Law at 8–9; Def. Reply Mem. of Law, Dkt. 24 at 7–8.[5]  Defendant acknowledges, however, that, in 2019, 6.9 percent of its baby rocker sales were to customers in the State of New York.  *See* Def. Raeply Mem. of Law at 8.

Defendant is subject to personal jurisdiction under C.P.L.R. § 302(a)(1).  Defendant ships its infringing goods into New York and almost seven percent of its baby rocker sales were to New York customers.  Those facts are more than sufficient to establish that Defendant has transacted business in the state.  *See* Compl. ¶¶ 7–8, 72; Pl. Mem. of Law at 8–9; Def. Reply Mem. of Law at 7-8; *see also, e.g.*, *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 469 (S.D.N.Y. 2008) (finding a dozen sales to New York customers from Defendant's website sufficient to show that "defendants have purposely availed themselves of the privilege of conducting activities in New York"); *Pearson Educ., Inc. v. Shi*, 525 F. Supp. 2d 551, 557 (S.D.N.Y. 2007) ("Plaintiffs' allegations that Defendants consummated multiple sales of their copyrighted books with New York customers through the Internet constitute an adequate showing of Defendants' purposeful contacts with New York."); *Two's Co., Inc. v. Hudson*, No. 13-CV-3338, 2014 WL 903035, at *5 (S.D.N.Y. Mar. 6, 2014) ("The combination of the semi-interactive website which allows out-of-state consumers to commence a purchase through the website and the actual sale of products to New York . . . satisfies the 'transacting business' prong of New York's long-arm statute.").  In addition, there is a substantial relationship between the

---

[4]    Plaintiff's residence is irrelevant to the Court's venue analysis.  *See* 28 U.S.C. § 1391(b)–(c).

[5]    Defendant filed two replies that are identical except for the attached exhibits.  *Compare* Dkt. 24 *with* Dkt. 25.  All references here will be to docket entry 24.

transactions occurring within New York and the cause of action sued upon because Plaintiff's claim is that Defendant is infringing its intellectual property by selling counterfeit goods into New York. *See* Compl. ¶ 72; Pl. Mem. of Law at 8-9; *see also Astor Chocolate Corp. v. Elite Gold Ltd.*, 510 F. Supp. 3d 108, 126 (S.D.N.Y. 2020); *Shi*, 525 F. Supp. 2d at 557.

Because the Court has personal jurisdiction over Defendant pursuant to C.P.L.R. § 302(a)(1) it need not consider other grounds for personal jurisdiction.[6]

## 2.    Due Process

Even if the Court has jurisdiction pursuant to New York's long-arm statute, asserting personal jurisdiction over Defendant must comport with due process. To exercise personal jurisdiction over an out-of-state defendant, the Due Process Clause requires that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash.,* 326 U.S. 310, 316 (1945) (citations omitted). In evaluating whether a defendant has sufficient minimum contacts, the "crucial question is whether the defendant has purposefully avail[ed] itself of the privilege of conducting activities within the forum state" such that it "should reasonably anticipate being haled into court there." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242–43 (2d Cir. 2007) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). "[A]s a

---

[6]    There is also personal jurisdiction over Defendant pursuant to C.P.L.R. § 302(a)(2), which provides for personal jurisdiction over a non-domiciliary that "in person or through an agent . . . commits a tortious act within the state. . ." C.P.L.R. § 302(a)(2). "Trademark infringement can be a 'tort' for the purpose of determining long-arm jurisdiction." *Energy Brands*, 571 F. Supp. 2d at 470–71 (citation omitted); *see also Bensusan Rest. Corp. v King*, 937 F. Supp. 295, 299 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 25 (2d Cir. 1997). Because Defendant has admitted selling allegedly infringing products in New York, *see* Def. Reply Mem. of Law at 8, the Court has personal jurisdiction pursuant to C.P.L.R. § 302(a)(2). *See, e.g., Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 567 (S.D.N.Y. 2000) ("Offering one copy of an infringing work for sale in New York . . . constitutes commission of a tortious act within the state sufficient to imbue [the] Court with personal jurisdiction over the infringers.") (citing *Editorial Music Latino Americana, S.A. v. Mar Int'l Records, Inc.*, 829 F. Supp. 62, 64 (S.D.N.Y. 1993)).

practical matter, the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances than N.Y. C.P.L.R. § 302, and a foreign defendant meeting the standards of § 302 will satisfy the due process standard." *Energy Brands*, 571 F. Supp. 2d at 469 (citing *United States v. Montreal Tr. Co.*, 358 F.2d 239, 242 (2d Cir. 1966)).

Courts have repeatedly held that selling items to New York-based customers constitutes purposeful availment. *See, e.g.*, *Chloé*, 616 F.3d at 171 ("offering bags for sale to New York consumers on the Queen Bee website and [] selling bags—including at least one counterfeit Chloé bag—to New York consumers" constituted purposeful availment); *Astor Chocolate*, 510 F. Supp. 3d at 127 (marketing, selling, invoicing, and delivering allegedly infringing products to customers in New York constitutes purposeful availment); *Shi*, 525 F. Supp. 2d at 557–58 (where the alleged sale of nineteen copyrighted books or electronic files of the same works into New York constituted purposeful availment). Further, "New York has an interest in adjudicating cases of copyright and trademark infringement allegedly perpetrated against those who live and work in the state." *Amorphous v. Morais*, No. 17-CV-631, 2018 WL 1665233, at *7 (S.D.N.Y. Mar. 15, 2018); *see also Ed. Music Latino Americana*, 829 F. Supp. 62, 66 (S.D.N.Y. 1993) ("New York has a significant interest in protecting copyright holders from the sale of infringing goods in New York."); *McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 295 F. Supp. 3d 404, 414 (S.D.N.Y. 2017). Accordingly, the exercise of personal jurisdiction over Defendant comports with due process.

Because the Court has personal jurisdiction over Defendant in this District, venue is proper under § 1391(b)(1). Accordingly, the Court need not consider other grounds for venue; Defendant's motion to dismiss for lack of venue is denied.

### B.      Motion to Transfer Venue

In the alternative, Defendant moves to transfer venue under 28 U.S.C. § 1404 to the

District of New Jersey, where Defendant is headquartered.  *See* **Def. Mem. of Law** at 9.  "For the

convenience of parties and witnesses, in the interest of justice, a district court may transfer any

civil action to any other district or division where it might have been brought or to any district or

division to which all parties have consented."  28 U.S.C. § 1404.  Section 1404 gives courts

"wide latitude to decide whether to transfer venue." *Enigma Software Grp. USA, LLC v.*

*Malwarebytes Inc.*, 260 F. Supp. 3d 401, 406 (S.D.N.Y. 2017) (citations omitted); *see also In re*

*Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) ("motions for transfer lie within the

broad discretion of the district court and are determined upon notions of convenience and

fairness on a case-by-case basis") (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29

(1988)).

In deciding a motion to transfer venue, courts first determine whether the action could

have been brought in the prospective transferee district, and then decide whether transfer would

be appropriate.  *See Enigma Software*, 260 F. Supp. 3d at 407.  To guide this inquiry, courts

balance a number of factors, including: "(1) the convenience of the witnesses; (2) the

convenience of the parties; (3) the location of relevant documents and the relative ease of access

to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the

attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's

familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and

(9) trial efficiency and the interests of  justice." *Id.* (internal quotation marks and citation

omitted).  These factors are not exhaustive, there is no rigid formula for balancing them, and no

single factor is determinative. *See, e.g.*, *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d

Cir. 2006) ("notions of convenience and fairness are considered on a case-by-case basis");
*Tlapanco v. Elges*, 207 F. Supp. 3d 324, 328 (S.D.N.Y. 2016) ("No one factor is dispositive and
the relative weight of each factor depends on the particular circumstances of the case.") (citation
omitted).  Ultimately, the party seeking transfer bears the burden of proving by clear and
convincing evidence that transfer is warranted.  *See New York Marine & Gen. Ins. Co. v. Lafarge
N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010); *see also Tlapanco*, 207 F. Supp. 3d at 328.

While there is no question that this case could have been brought in the District of New
Jersey, Defendant has not meaningfully argued its motion to transfer, stating only that the Court
should transfer venue.  *See* Def. Mem. of Law at 9; Def. Reply Mem. of Law at 8.  Defendant
does not argue any of the above-identified factors, the inconvenience of litigating in this District,
or the burden, or lack therefore, on Plaintiff from transfer.  *See, e.g.*, *Enigma Software,* 260 F.
Supp. 3d at 411 ("A defendant moving for transfer must show both that the original forum is
inconvenient for it and that the plaintiff would not be substantially inconvenienced by a
transfer") (citation omitted); *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 27 (S.D.N.Y. 2016)
("The party moving for transfer 'must provide the Court with a detailed list of probable
witnesses who will be inconvenienced if required to testify in the current forum.'") (citation
omitted).

Because Defendant has failed to present either evidence or argument that transfer is
warranted, Defendant's motion to transfer this case to the District of New Jersey is denied.

## II.   Defendant's Motion to Dismiss for Failure to State a Claim

Defendant also argues that Plaintiff has failed to state a claim as to any of its causes of
action.  To survive a motion to dismiss for failure to state a claim upon which relief can be
granted, "a complaint must allege sufficient facts, taken as true, to state a plausible claim for

relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).  When considering a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiffs.  *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted).  The Court is not required, however, "to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

### A.     Federal Trademark Infringement

To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege sufficient facts to establish that: (1) the plaintiff's mark is entitled to protection, and (2) the defendant's "use of its mark is likely to cause consumers confusion as to the origin or sponsorship of [its] goods." *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016); *see also Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 115 (2d Cir. 2006).  A certificate of registration with the Patent and Trademark Office ("PTO") is *prima facie* evidence that the mark is entitled to protection.  *See Guthrie*, 826 F.3d at 37; *see also Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999).

Likelihood of confusion "turns on whether ordinary customers 'are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of [the junior user's mark]." *Guthrie*, 826 F.3d at 37 (citation omitted); *see also Pirone v. MacMillan, Inc.*, 894 F.2d 579, 584 (2d Cir. 1990) ("It is well settled that the crucial determinant

11

in an action for trademark infringement . . . is 'whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question.'") (citation omitted); *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205 (2d Cir. 1979) ("The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement").  Because likelihood of confusion is a "fact-intensive analysis," it "ordinarily does not lend itself to a motion to dismiss." *Pulse Creations, Inc. v. Vesture Grp., Inc.,* 154 F. Supp. 3d 48, 55 (S.D.N.Y. 2015) (citations omitted); *see also Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 446 (S.D.N.Y. 2012) (collecting cases).

In assessing whether a likelihood of confusion exists, courts apply the well-known eight-factor balancing test announced in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).  *See, e.g.*, *Saxon Glass Techs., Inc. v. Apple Inc.*, 824 F. App'x 75, 78 (2d Cir. 2020); *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009). The *Polaroid* factors include: (1) the strength of the trademark; (2) the similarity of the marks; (3) the proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) the respective quality of the products; and (8) the sophistication of consumers in the relevant market.  *See Starbucks*, 588 F.3d at 115 (citation omitted).  Application of the *Polaroid* factors is not "mechanical," and no single factor is dispositive.  *See Guthrie*, 826 F.3d at 37; *see also Brennan's, Inc. v. Brennan's Rest., LLC*, 360 F.3d 125, 130 (2d Cir. 2004).  A court must focus on "the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused." *Starbucks*, 588 F.3d at

115.  Application of the *Polaroid* factors is, however, "'unnecessary' where use of an identical mark — that is, a counterfeit mark — is at issue" because "consumer confusion is presumed in such cases." *C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 241 (S.D.N.Y. 2013) (citations omitted).

Defendant argues that Plaintiff's federal trademark infringement claim must be dismissed because Plaintiff's CHARLIE CRANE mark is not entitled to protection and there is no likelihood of confusion.  *See* Def. Mem. of Law at 2–6.  Defendant argues that, at the time of its alleged infringement, the CHARLIE CRANE mark was not enforceable because it had not yet been approved by the PTO.  *See* Def. Mem. of Law at 4; *see also* Def. Reply Mem. of Law at 3.  Defendant further asserts that there is no likelihood of confusion in the United States because "it is a separate market altogether from Plaintiff's consumers in France."  *See* Def. Mem. of Law at 5; *see also id.* at 6 (considering "the geographic separation between the parties, Plaintiff[] ha[s] no . . . rights of protection concerning its baby rocker design in this district or anywhere in the United States").[7]

Plaintiff argues that its common law rights in the CHARLE CRANE mark predate its registration.  Plaintiff asserts that it first used the mark in commerce in the United States in 2015.  *See* Pl. Mem. of Law at 3 (citing *Threeline Imports, Inc. v. Vernikov*, 239 F. Supp. 3d 542, 558 (E.D.N.Y. 2017)); *see also* Compl. ¶¶ 12–15.  Plaintiff further argues that, even if Defendant's infringement ended in September 2020 as asserted by Defendant, Plaintiff applied for federal registration of the CHARLIE CRANE mark on December 20, 2019, thereby entitling Plaintiff,

---

[7]     Defendant, in its reply brief, also argues that there is no likelihood of confusion because Plaintiff has not adequately pled the strength of its mark or the degree of similarity between the two marks.  *See* Def. Reply Mem. of Law at 5–6.  These arguments will not be considered because it is improper to raise new arguments in a reply brief. *See Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999); *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993).

"at a minimum, to a statutory priority date of at least December 20, 2019."  Pl. Mem. of Law at
3–4 (citing 15 U.S.C. § 1057(c) ("the filing of the application to register such mark shall
constitute constructive use of the mark, conferring a right of priority, nationwide in effect, on or
in connection with the goods or services specified in the registration")).  Finally, Plaintiff argues
that, because it is alleging confusion in the United States, Plaintiff has properly pled that
"Defendant's acts of infringement in the United States have created a likelihood of confusion in
the United States and have infringed Plaintiff's rights in the United States."  Pl. Mem. of Law at
6.[8]

Plaintiff has adequately stated a claim for federal trademark infringement of its
CHARLIE CRANE mark.  First, because Plaintiff filed its application to register the CHARLIE
CRANE mark on December 20, 2019, Plaintiff's statutory right of priority began at least by that
date.  *See* 15 U.S.C. § 1057(c).  The alleged infringement — which purportedly ended in
September 2020, *see* Def. Mem. of Law at 4, 6; Def. Reply Mem. of Law at 3–4 — thus
occurred while Plaintiff had a registered and valid trademark, *see* Pl. Mem. of Law at 3.[9]
Accordingly, Plaintiff has sufficiently pled that its CHARLIE CRANE trademark is entitled to
protection from Defendant's alleged infringement.  *See Guthrie,* 826 F.3d at 37.

---

[8]     The parties disagree about whether the CHARLIE CRANE mark covers baby rockers.  Defendant asserts
that the CHARLIE CRANE mark is not specifically registered for a baby rocker and, thus, Plaintiff cannot prevent
Defendant from making its own rocker.  *See* Def. Mem. of Law at 3–4.  Plaintiff argues that, while the CHARLIE
CRANE registration does not specifically include "rockers," it covers "domestic furniture" and "bedroom furniture,"
terms broad enough to include baby furniture such as the rocker at issue.  *See* Pl. Mem. of Law at 2.  This dispute is
one of fact not properly addressed at this stage.  *See, e.g., Pulse Creations*, 154 F. Supp. 3d at 55 ("As an initial
matter, whether the pictured items constitute 'girl's clothing' would itself seem to be a question of fact not properly
determinable on a Rule 12(b)(6) motion."); *Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 347 (S.D.N.Y. 2014) ("The
Court cannot resolve [] a factual dispute on a motion to dismiss but must take the plaintiffs' allegations as true.").

[9]     Defendant, in its reply brief, argues that, because it "owns a trademark that has a first use in commerce in
the United States . . . in 2011, Finn & Emma's trademark clearly has priority over Plaintiff's mark within the United
States."  Def. Reply Mem. of Law at 4.  The validity of Defendant's trademark is, however, irrelevant; the question
before the Court is whether Plaintiff's mark is entitled to protection.  Moreover, having a valid trademark does not
give Defendant license to infringe another's entirely different mark.

Plaintiff has also adequately alleged that Defendant counterfeited its CHARLIE CRANE mark. *See* Compl. ¶¶ 34–35, 43. Thus, consumer confusion is presumed. *See C=Holdings*, 992 F. Supp. 2d at 241. Even if confusion were not presumed, however, Plaintiff has sufficiently pled a likelihood of confusion. While Defendant argues that there is a lack of geographic proximity between the two parties, *see* Def. Mem. of Law at 5–6, Plaintiff has alleged that both parties are operating in the United States and that the alleged infringement occurred here, thereby raising a likelihood of confusion for U.S. customers, including those in this District. *See* Compl. ¶¶ 3, 8, 12, 21, 34; Pl. Mem. of Law at 6; *see also* Decl. of Delia Elbaum, Dkt. 19 ¶¶ 12, 24, 26; Decl. of Thomas Lépine ¶¶ 4-5. Accordingly, Plaintiff has adequately pled that there is no "geographic separation of the products," and, thus, a likelihood of confusion. *See Car-Freshner Corp., v. Big Lots Stores, Inc.*, 314 F. Supp. 3d 145, 151 (N.D.N.Y. 2004).

In sum, Defendant's motion to dismiss Plaintiff's federal trademark infringement claim is denied because Plaintiff has adequately established that: (1) its CHARLIE CRANE mark is entitled to protection; and (2) there is a likelihood of confusion between the parties' products.

### B.      Common Law Trademark Infringement

Defendant also moves to dismiss Plaintiff's common law trademark infringement claim, which covers both its CHARLIE CRANE and LEVO marks.

The elements of trademark infringement under New York law mirror those under the Lanham Act. *See Pulse Creations, Inc.,* 154 F. Supp. 3d at 54; *see also Standard & Poor's Corp. v. Commodity Exch., Inc.*, 683 F.2d 704, 708 (2d Cir. 1982) ("The heart of a successful claim based upon . . . the Lanham Act . . . and common law trademark infringement is the showing of likelihood of confusion as to the source or sponsorship of defendant's products"); *Info. Superhighway, Inc. v. Talk Am., Inc.*, 395 F. Supp. 2d 44, 56 (S.D.N.Y. 2005) ("The

elements necessary to prevail on common law causes of action for trademark infringement . . .

mirror Lanham Act claims."). Accordingly, because the Court has already determined that

Plaintiff stated a claim for federal trademark infringement with respect to its CHARLIE CRANE

mark, Plaintiff has also stated a claim for common law trademark infringement of that mark.

The analysis for Plaintiff's LEVO mark, which is unregistered, *see* Pl. Mem. of Law at 2,

is somewhat different. An unregistered mark is protectable if it would qualify for registration as

a trademark, *Star Indus., Inc. v. Bacardi & Co. Ltd*, 412 F.3d 373, 381 (2d Cir. 2005), meaning it

is either: (1) inherently distinctive; or (2) has acquired distinctiveness through secondary

meaning. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992); *accord, e.g.*,

*Allied Maint. Corp. v. Allied Mech. Trades, Inc.*, 42 N.Y.2d 538, 545 (1977); *Alexander Ave.*

*Kosher Rest. Corp. v. Dragoon*, 306 A.D.2d 298, 300 (2d Dep't 2003).[10]

To gauge a mark's distinctiveness, courts first classify the mark as generic, descriptive,

suggestive, arbitrary, or fanciful. *Trombetta v. Novocin*, 414 F. Supp. 3d 625, 630-31 (S.D.N.Y.

2019) (citing *Lane Cap. Mgmt.*, 192 F. 3d at 346); *accord, e.g.*, *Ritani*, 880 F. Supp. 2d at 444,

448 (combining the distinctiveness analysis for common law and federal claims); *JJFM Corp. v.*

*Mannino's Bagel Bakery*, 70 Misc. 3d 171, 176 (N.Y. Sup. Ct. 2020) (citing Second Circuit

precedent to analyze distinctiveness for common law claim).

> A mark is generic if it is a common description of products and refers to the genus
> of which the particular product is a species. A mark is descriptive if it describes the
> product's features, qualities, or ingredients in ordinary language or describes the
> use to which the product is put. A mark is suggestive if it merely suggests the
> features of the product, requiring the purchaser to use imagination, thought, and

[10] Some courts have interpreted *Allied Maintenance* to require secondary meaning for unregistered marks. *See, e.g.*, *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 325 (S.D.N.Y. 2012); *Gasoline Heaven at Commack, Inc. v. Nesconset Gas Heaven, Inc.*, 191 Misc. 2d 646, 648 (N.Y. Sup. Ct. 2002). But those cases perpetuate a misinterpretation of *Allied Maintenance*, which drew a distinction between technical and nontechnical trademarks, *see* 42 N.Y.2d at 542 (defining technical trademarks as "marks which were arbitrary, fanciful or coined"), and made clear that only the latter require proof of secondary meaning, *see id.* at 542 n.2. Thus, *Allied Maintenance* does not dispute, but rather confirms a distinction between unregistered marks that are inherently distinctive and those that require proof of secondary meaning.

perception to reach a conclusion as to the nature of the goods. An arbitrary mark
applies a common word in an unfamiliar way.  A fanciful mark is not a real word
at all, but is invented for its use as a mark.

*Lane Cap. Mgmt.*, 192 F.3d at 344 (citation omitted).  Suggestive, arbitrary, or fanciful marks are

deemed inherently distinctive while descriptive marks are entitled to trademark protection only if

the mark has acquired secondary meaning among customers.  *Id.* (citations omitted).

Defendant argues that Plaintiff has pled no facts from which the Court could infer that the

LEVO mark has secondary meaning because Plaintiff did not plead where or how many baby

rockers Plaintiff has sold in the United States or in New York.  Def. Mem. of Law at 6.  Plaintiff,

in response, argues that secondary meaning would only be required if the LEVO mark was

descriptive, which it is not.  *See* Pl. Mem. of Law at 6 (citing *Thompson Med. Co. v. Pfizer Inc.*,

753 F.2d 208, 216 (2d Cir. 1985)).

LEVO is not a real word (at best, it is a prefix); it was invented for its use as Plaintiff's

mark.  Accordingly, it is fanciful mark.  *See, e.g.*, *Star Indus.*, 412 F.3d at 385 ("fanciful marks

are ones that do not communicate any information about the product either directly or by

suggestion").  As a fanciful mark, LEVO is deemed to be inherently distinctive and entitled to

protection.  *See Genesee Brewing Co., Inc, v. Stroh Brewing Co.*, 124 F.3d 137, 143 (2d. Cir

1997).

Likelihood of confusion for common law trademark infringement, like federal claims, is

determined through application of the *Polaroid* factors.  *See, e.g.*, *JJFM Corp.*, 70 Misc. 3d at

173–74.  Defendant makes the same arguments regarding there not being a likelihood of

confusion vis-à-vis the LEVO mark as it made with respect to the CHARLIE CRANE mark.  *See*

Def. Mem. of Law at 5–6.  Defendant's arguments are as meritless as to LEVO as they were to

CHARLIE CRANE.

In sum, Defendant's motion to dismiss is denied as to Plaintiff's federal and common law trademark infringement claims because Plaintiff has adequately alleged: (1) that its marks are entitled to protection; and (2) a likelihood of confusion.

### C.     Trade Dress Infringement Under 15 U.S.C. § 1125(A) and New York Law

Defendant has also moved to dismiss Plaintiff's claims for trade dress infringement under 15 U.S.C. § 1125 and New York common law.  In all significant aspects, trade dress protection is coextensive under New York state law and federal law, *see, e.g.*, *Heller Inc. v. Design Within Reach, Inc.,* No. 09-CV-1909, 2009 WL 2486054, at *5 (S.D.N.Y. Aug. 14, 2009) (citing N.Y. Gen. Bus. Law § 360–l; *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 250–51 (S.D.N.Y. 2004)); accordingly, the Court will analyze these claims together.

Trade dress is a "broad concept" that "encompasses the design and appearance of the product together with all the elements making up the overall image that serves to identify the product presented to the customer." *Fun–Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 999, 1001 (2d Cir. 1997).  It is "essentially a product's total image and overall appearance . . . as defined by its overall composition and design, including size, shape, color, texture, and graphics." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir. 1995) (cleaned up).  Two types of trade dress are entitled to protection: product packaging and product design.  "Product packaging" refers to the "dressing" or "packaging" of a product, while "product design" refers to the design or configuration of the product itself.  *See Heller*, 2009 WL 2486054, at *5; *see also Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 377–79 (2d Cir. 1997).  Plaintiff seeks protection for the overall appearance of its baby rocker and, thus, is claiming product design trade dress.

To state a claim for product design trade dress infringement, a plaintiff must offer "a precise expression of the character and scope of the claimed trade dress" and articulate the elements of design with specificity. *Landscape Forms*, 113 F.3d at 381-82. A plaintiff must also allege that: (1) the claimed trade dress is non-functional; (2) the claimed trade dress has secondary meaning; and (3) there is a likelihood of confusion between the parties' goods. *See Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 F. App'x 389, 391 (2d Cir. 2003); *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115–16 (2d Cir. 2001).

Defendant challenges Plaintiff's trade dress infringement claims on several interrelated grounds. Defendant argues that, because Plaintiff does not have a design or utility patent, there is no infringement by Defendant because, in the absence of a patent, competitors are free to copy "publicly known design and utilitarian ideas." *See* Def. Mem. of Law at 3 (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 152 (1989)).[11] Defendant also asserts that Plaintiff's trade dress is not protectable because it is functional. *Id.* at 4. Thus, Defendant argues, "even if copying would confuse consumers about a product's source, competitors may copy *unpatented functional* designs." *Id.* (emphasis in original).[12] Finally, Defendant makes the same arguments regarding likelihood of confusion for trade dress infringement as it did for trademark infringement. *See id.* at 5–6.[13]

---

[11]     Defendant confusingly then goes on to argue that "a comparable Design Patent exists in the United States, which proves functionality," citing to its statement of facts. *See* Def. Mem. of Law at 4 (citing Statement of Facts ¶¶ 5, 7) *see also* Def. Mem. of Law at Ex. C. Besides the fact that Defendant refers to a design patent but attaches a utility patent, the existence of a comparable patent is not determinative at the motion to dismiss stage, but rather speaks to a potential dispute of fact about the functionality of Plaintiff's design.

[12]     Defendant also asserts that because a baby rocker is a functional product, it is not protectable. *See* Def. Reply Mem. of Law at 6–7. But this is a misunderstanding of Plaintiff's claims. Plaintiff is claiming protection of specific elements of trade dress related to its rocker design, not protection for baby rockers generally.

[13]     Because the Court has already held that Plaintiff has adequately pled a likelihood of confusion, *see supra* at 15, 17, the result is the same here.

Plaintiff argues, in response, that a patent does not protect a trade dress and, thus, the fact that Plaintiff does not have a patent is irrelevant.  *See* Pl. Mem. of Law at 1.  Plaintiff further argues that its trade dress is not functional, and that functionality is a question of fact not appropriate for consideration at the motion to dismiss stage.  *See* Pl. Mem. of Law at 4; Compl. ¶¶ 17–19.

The Court need not address all elements of Plaintiff's trade dress claim because Plaintiff has failed adequately to allege the character and scope of the claimed trade dress.  To do so requires more than just providing a "laundry list" of the elements that constitute the product's design; Plaintiff must allege how those elements are distinctive.  *See, e.g.*, *Caraway Home, Inc. v. Pattern Brands, Inc.*, No. 20-CV-10469, 2021 WL 1226156, at *8 (S.D.N.Y. Apr. 1, 2021) ("In adequately pleading how one's trade dress is distinctive, a plaintiff must provide more than just 'a laundry list of the elements' that constitute its product design.") (quoting *Nat'l Lighting Co., Inc. v. Bridge Metal Indus., LLC*, 601 F. Supp. 2d 556, 562 (S.D.N.Y. 2009)); *Shevy Custom Wigs v. Aggie Wigs,* No. 06-CV-1657, 2006 WL 3335008, *5 (E.D.N.Y. Nov. 17, 2006) ("The issue is not just *which* features are distinctive, but also *how* they are distinctive.") (emphasis in original).  Plaintiff has simply listed the features of its rocker including the "unique baby rocker design featuring natural simplified design elements, with minimal components" and the "distinct shape" of its rocker's curved legs.  *See* Compl. ¶ 18; *see also id.* ¶ 17 ("Plaintiff's LEVO Rocker creates a distinct overall look and commercial impression.").  These descriptions are insufficient to determine how Plaintiff's design is distinctive from other baby rockers.  *See, e.g.*, *Yurman Design*, 262 F.3d at 117 (A party seeking trade dress protection "must . . . be able to point to the elements and features that *distinguish* its trade dress.") (emphasis added); *Sara Designs, Inc. v. A Classic Time Watch Co. Inc.*, 234 F. Supp. 3d 548, 555 (S.D.N.Y. 2017) ("The Complaint fails to

articulate the precise nature of the trade dress Plaintiff purports to claim, and merely contains a

high level description of features . . . without allegations as to whether and how those features

are distinctive."); *Nat'l Lighting*, 601 F. Supp. 2d at 562 ("A conclusory reliance on the 'entire

look of the product' does not fulfill the plaintiff's obligation to offer 'a precise expression of the

character and scope of the claimed trade dress.'"); *Caraway*, 2021 WL 1226156, at *8

("[W]ithout more explanation on how Caraway Pans differ from other cookware, the Court is left

only with the trade dress descriptions that Caraway has alleged.  But without allegations of how

these elements are uncommon to other cookware, the descriptions shed no additional light on

how Caraway's trade dress is distinct.").[14]  Accordingly, Plaintiff has failed to satisfy the

"threshold requirement" to articulate the elements of its trade dress.  *See NSI Int'l*, 2021 WL

3038497, at *6.[15]

Because Plaintiff has not adequately alleged a precise expression of the character and

scope of the claimed trade dress, its trade dress infringement claims under 15 U.S.C. § 1125(a)

---

[14]     Plaintiff's inclusion of a picture of its LEVO rocker in the Complaint does not change this analysis as "images alone do not satisfy the plaintiff's obligation to articulate the distinctive features of the trade dress."  *NSI Int'l Inc. v. Horizon Grp. USA, Inc.*, No. 20-CV-8389, 2021 WL 3038497, at *6 (S.D.N.Y. July 16, 2021); *see also Nat'l Lighting*, 601 F. Supp. 2d at 562-63 (holding that the court could not "be expected to distill from a set of images those elements that are common to a line of products and both distinctive and non-functional.").

[15]     Even if Plaintiff had alleged the character and scope of its claimed trade dress, Plaintiff's claim would still fail because Plaintiff has failed to allege adequately secondary meaning.  When evaluating whether a trade dress has secondary meaning, courts consider several non-exclusive factors, including: "(1) advertising expenditures; (2) consumer studies linking the mark to a source; (3) unsolicited media coverage of the product; (4) sales success; (5) attempts to plagiarize the mark; and (6) length and exclusivity of the mark's use."  *GeigTech E. Bay LLC v. Lutron Elecs. Co.*, 352 F. Supp. 3d 265, 282 (S.D.N.Y. 2018) (citation omitted).  Plaintiff alleges no facts speaking to any of these factors, except for facts related to Defendant's alleged infringement, which goes to attempts to plagiarize. *See, e.g., Int'l Diamond Imp., Inc. v. Oriental Gemco (N.Y.), Inc.*, 64 F. Supp. 3d 494, 523 (S.D.N.Y. 2014). Plaintiff's only other evidence is two conclusory statements regarding the prominence and distinctiveness of its product.  *See* Compl. ¶¶ 15, 50.  This is insufficient to allege adequately that Plaintiff's trade dress has secondary meaning.  *See, e.g., Sara Designs*, 234 F. Supp. 3d at 555 (Plaintiff's claim failed where "the Complaint fails to plead any facts, such as ones relating to Plaintiff's advertising expenditures, consumer surveys, marketing coverage or prior attempts to plagiarize Plaintiff's trade dress, that would support a proper inference of secondary meaning"); *see also id.* at 555 n.2 ("being featured in magazines and websites, absent facts to support the additional factors outlined above, would not be sufficient to plead secondary meaning").

and New York law are dismissed.  Plaintiff will be permitted to move for leave to file an amended complaint on these claims.

> **D.**    **False Designation of Origin, False Advertising, and Unfair Competition Under 15 U.S.C. § 1125(A) and Unfair Competition Under New York Law**

Defendant also argues that Plaintiff has not adequately pled its claims for false designation, false advertising, and unfair competition under 15 U.S.C. § 1125(a) and for unfair competition under New York law.  *See* Def. Mem. of Law at 6–7.

To prevail on either claim, Plaintiff must adequately plead the same elements required for a trademark infringement claim under the Lanham Act.  *See Info. Superhighway*, 395 F. Supp. 2d at 56; *see also Pirone*, 894 F.2d at 584 ("It is well settled that the crucial determinant in an action for . . . unfair competition is 'whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question.'") (citation omitted); *OffWhite Prods., LLC v. Off-White LLC*, 480 F. Supp. 3d 558, 563 (S.D.N.Y. 2020) (noting that the *prima facie* case required for a false designation of origin claim is the same as for a trademark infringement claim).  Accordingly, to state claims under 15 U.S.C. § 1125(a) and New York law, Plaintiff must allege sufficient facts to establish that: (1) its mark is entitled to protection; and (2) Defendant's use of its mark is likely to cause consumer confusion.  *See Pulse Creations,* 154 F. Supp. 3d at 56; *see also OffWhite*, 480 F. Supp. 3d at 563; *Trombetta*, 414 F. Supp. 3d at 630.  A party asserting a claim for unfair competition under New York law must also allege bad faith on the part of the defendant.  *See Pulse Creations*, 154 F. Supp. 3d at 57 (citing *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 485 (2d Cir. 2005)).

22

Because Plaintiff adequately stated a claim for federal trademark infringement, it has also

adequately alleged the same elements for purposes of its 15 U.S.C. § 1125(a) claim.[16]

Plaintiff will have also adequately pled a claim of unfair competition under New York

law if it has adequately pled Defendant's bad faith. *See Pulse Creations*, 154 F. Supp. 3d at 57

(citing *Erickson Beamon Ltd. V. CMG Worldwide, Inc.*, No. 12-CV-5105, 2014 WL 3950897, at

*9 (S.D.N.Y. Aug. 13, 2014).  Plaintiff alleges that Defendant, as Plaintiff's former distributor,

has at all relevant times "had full knowledge of Plaintiff's ownership of and exclusive right to

use the CHARLIE CRANE and LEVO trademarks and the LEVO Rocker Trade Dress."  Compl.

¶¶ 21–22, 37.  Plaintiff alleges that Defendant only began manufacturing its infringing product

after Plaintiff rejected Defendant's requests to license the marks.  *See id.* ¶¶ 24–29.  And Plaintiff

alleges that Defendant continued to sell its infringing product even after Plaintiff put it on notice

that its product infringed Plaintiff's rights.  *See id.* ¶¶ 36, 55.  These allegations are sufficient to

state a claim for bad faith under New York law.  *See, e.g.*, *Star Indus., Inc.*, 412 F.3d at 389

("Bad faith may be inferred from a junior user's actual or constructive knowledge of the senior

user's mark."); *Pearson Educ., Inc. v. Kumar*, 721 F. Supp. 2d 166, 191 (S.D.N.Y. 2010)

("where the defendant is aware of the existence of the plaintiff's mark and proceeds to use it in

violation of unfair competition law, a finding of 'bad faith' has been inferred") (citing *Wyndham*

*Co. v. Wyndham Hotel Co.,* 176 Misc. 2d 116, 122 (N.Y. Sup. Ct. 1997)); *Franklin v. X Gear*

*101. LLC*, No. 17-CV-6452, 2018 WL 3528731, at *14 (S.D.N.Y. July 23, 2018) ("Bad faith

under New York law is presumed where the defendant intentionally copied the plaintiff's

---

[16]    While Plaintiff's federal trademark infringement claim does not cover its LEVO mark, as discussed *supra* at 16–18, Plaintiff has adequately alleged that its LEVO mark is entitled to protection and likely to be confused with Defendant's infringing product.

mark.") (cleaned up).  Accordingly, Plaintiff has sufficiently stated a claim for unfair

competition under New York law.

Because Plaintiff has adequately alleged claims under 15 U.S.C. § 1125(a) and for unfair

competition under New York law, Defendant's motion to dismiss is denied.

### E.    Deceptive Acts and Practices Under N.Y. Gen. Bus. Law §§ 133 and 349

Finally, Defendant argues that Plaintiff has not adequately pled that it engaged in

deceptive practices under New York state law.  *See* Def. Mem. of Law at 6–7.

New York law prohibits "deceptive acts or practices in the conduct of any business, trade

or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 349.  To

state a claim under § 349, a plaintiff must adequately plead that: (1) "the challenged act or

practice was consumer-oriented"; (2) "it was misleading in a material way"; and (3) "the plaintiff

suffered injury as a result of the deceptive act."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758

F.3d 473, 490 (2d Cir. 2014) (internal quotation marks omitted).

Courts in the Second Circuit are divided over whether trademark infringement claims are

viable under § 349.  *Pulse Creations*, 154 F. Supp. 3d at 58.  The majority view, and the view

that this Court adopts, is that "trademark infringement claims are not cognizable under . . . §

349 unless there is specific and substantial injury to the public interest over and above the

ordinary trademark infringement."  *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F.

Supp. 2d 519, 543 (S.D.N.Y. 2012).[17]  Plaintiff alleges that Defendant's conduct "constitute[s]

---

[17]    S*ee also, e.g.*, *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 241 F. Supp. 3d 461, 483 (S.D.N.Y.
2017) ("To be sure, competitors, as well as consumers, have standing to sue under § 349, but only if they allege
harm to the 'public at large.'") (cleaned up); *Pulse Creations*, 154 F. Supp. 3d at 58 (collecting cases); *Kaplan, Inc.
v. Yun*, 16 F. Supp. 3d 341, 351 (S.D.N.Y. 2014) ("courts in New York have routinely dismissed trademark claims
brought under Section[] 349 . . . as being outside the scope of the statute[], because ordinary trademark disputes do
not 'pose a significant risk of harm to the public health or interest'") (quoting *DePinto v. Ashley Scott, Inc.*, 222
A.D.2d 288, 289 (1st Dep't 1995)); *JJFM Corp.*, 70 Misc. 3d at 179–80 ("Corporate competitors may bring a claim
under . . . § 349 as long as some harm to the public at large is at issue, such as potential dangers to public health or
safety.").

willful, deceptive acts and practices in the conduct of business, trade and/or commerce."  Compl. ¶ 105.  Plaintiff has not pled facts, however, from which the Court can infer that the harm from Defendant's alleged infringement "constitutes anything more than the ordinary harm that typically accompanies trademark infringement."  *Pulse Creations*, 154 F. Supp. 3d at 59. Accordingly, Plaintiff has failed to state a claim under § 349.

      "To establish liability under . . . § 133, a plaintiff must demonstrate (1) intent to deceive the public, and (2) the assumption, adoption, or use of a corporate, assumed, or trade name of another." *Knowyourmeme.com Network v. Nizri*, No. 20-CV-9869, 2021 WL 3855490, at *15 (S.D.N.Y. Aug. 30, 2021) (citations omitted); *see also Perfect Pearl*, 887 F. Supp. 2d at 542–43 ("§ 133 prohibits the use of a trade name that may deceive the public as to the real identity of a person, firm, or corporation. An indispensable element of a claim alleged under § 133 is intent to deceive the public.") (cleaned up).  "Actual or constructive knowledge" of the prior user's mark or trade dress accompanied by similarities between the marks "so strong that it seems plain that deliberate copying has occurred" give rise to a rebuttable presumption that the defendant is acting in bad faith to deceive the public under § 133.  *See Heritage of Pride, Inc. v. Matinee NYC, Inc.*, No. 14-CV-4165, 2014 WL 12783866, at *11 (S.D.N.Y. June 20, 2014) (citing *Paddington Corp. v. Attiki Imps. & Distribs., Inc.*, 996 F.2d 577, 586 (2d Cir. 1993); *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258–59 (2d Cir. 1987)).

      Plaintiff alleges that, despite "full knowledge of Plaintiff's ownership . . . and exclusive right to use," Defendant used Plaintiff's trademarks and trade dress without permission, and continued to do so even after Plaintiff notified Defendant that its product infringed Plaintiff's rights.  *See* Compl. ¶¶ 21–22, 36–37, 55.  Plaintiff further alleges that Defendant's acts were "calculated and designed intentionally to mislead and deceive the public" because, "during the

time that Defendant was selling counterfeit copies of the LEVO rocker, Defendant continued to use Plaintiff's CHARLIE CRANE and LEVO marks on Defendant's website, social media pages and search engine results, giving customers the impression that the counterfeit rockers were sourced from Plaintiff and were of the same quality as the authorized . . . rockers previously promoted and sold by Defendant." *Id.* ¶¶ 34, 104.  Plaintiff also alleges that Defendant did not notify its customers that Defendant had switched the rockers sold on its site, leading to at least one dissatisfied customer. *See id.* ¶¶ 32–33, 35.  These allegations are enough to state a claim under § 133, as Plaintiff has adequately pled that Defendant used its trademarks and trade dress and did so in bad faith to deceive the public. *See Heritage of Pride*, 2014 WL 12783866, at *11.

Accordingly, Defendant's motion to dismiss is granted as to Plaintiff's § 349 claim but denied as to Plaintiff's § 133 claim.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted in part and denied in part.  Defendant's motion to dismiss based on improper venue, or alternatively to transfer venue, is denied.  Defendant's motion to dismiss is further denied as to Plaintiff's claims for: (1) trademark infringement under the Lanham Act; (2) common law trademark infringement; (3) false designation of origin, false advertising, and unfair competition under the Lanham Act; (4) unfair competition under New York state law; and (5) deceptive acts and practices under N.Y. Gen. Bus. Law § 133.  Defendant's motion is granted, however, as to Plaintiff's claims for: (1) trade dress infringement under federal and New York state law; and (2) deceptive acts and practices under N.Y. Gen. Bus. Law § 349.  Any motion for leave to file an amended complaint as to Plaintiff's claims for trade dress infringement under federal and New York law must be

made not later than **March 18, 2022**, and must include a red lined version of the proposed

Amended Complaint.

      The Clerk of Court is respectfully directed to close the open motion at docket entry 19.


**SO ORDERED.**


**Date:  February 28, 2022**                          **VALERIE CAPRONI**
**New York, New York**                      **United States District Judge**